IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| BARRY E. MUKAMAL, solely in his capacity as Plan Administrator of the 942 Penn RR, LLC Post-Confirmation Bankruptcy Estate,<br><br>    Plaintiff,<br>vs.<br><br>RAZIEL OFER,<br>ROBERTO RAFAEL MENDEZ,<br>CASA FINANCIAL HOLDINGS LLC,<br>ZODIAC CAPITAL LLC,<br>DREXEL FINANCIAL LLC,<br>RONIEL RODRIGUEZ IV, P.A., AND<br>AJAR HOLDINGS, LLC<br><br>    Defendants. | CASE NO.: 24-CV-23332-JB |

**MOTION TO DISMISS DEFENDANT'S, RAZIEL OFER, CROSS-CLAIM [ECF No. 5]
AND INCPRORATED MEMORANDUM OF LAW**

COME NOW Defendants, Casa Financial Holdings LLC ("Casa"), Zodiac Capital LLC ("Zodiac"), Drexel Financial LLC ("Drexel"), Roniel Rodriguez IV, P.A. ("RRPA"), and AJAR Holdings, LLC ("AJAR" and collectively with Casa, Zodiac, Drexel and RRPA, the "Movants"), and hereby move this Honorable Court pursuant to Rules 8(a)(1)(2) & (3), 9(a)(1), (b)(f) & (g) and 12(a)(1)(B) and (b)(6), Fed. R Civ. P., to dismiss the Cross Claim filed by Defendant, Raziel Ofer [ECF No. 5, the "Cross Claim"], and state:

*Introduction*

In this removed action, Movants seek dismissal of the Cross Claim filed by Defendant, Raziel Ofer. [ECF No. 5]. First, the Cross Claim constitutes an impermissible shotgun pleading.

Second, each of the five (5) asserted causes of action[1] are barred by litigation privilege, and fails to state a claim upon which relief may granted. Finally, the Cross Claim is untimely.

*Brief Procedural History*

The instant matter finds its genesis in the matter of *In re: 942 Penn RR, LLC.*, Case No. 22-14038-LMI (Bankr. S.D. Fla. 2022) ("942 Penn"). Unlike most bankruptcy cases, 942 Penn resulted in a "surplus estate," wherein after payment to all creditors, there was a surplus of approximately $1,600,000 flowing to the equity holders of 942 Penn, to wit: Defendants, Robert Mendez and Raziel Ofer (the "Equity Holders"). Movants hold various judgments against Mr. Mendez and Mr. Ofer. With the permission of the bankruptcy court, Movants obtained charging orders against the interests of the Equity Holders in the various courts from where the judgments emanated. The Plaintiff in his capacity as Plan Administrator sought permission from the bankruptcy court to make an interim distribution of $800,000 to the Equity Holders, subject to the charging orders in favor of the Movants. Defendant, Raziel Ofer, has challenged the proposed distribution to the Movants[2]. The bankruptcy court then directed the Plan Administrator to file the instant interpleader action in the circuit court, in and for the 11th Judicial Circuit, and deposit the funds into the Registry of the circuit court.

On July 23, 2024, Defendant, Raziel Ofer, removed this case to United States District Court – Southern District of Florida. *Mukamal v. Ofer et al Case No. 24-cv-22803-BB, (S.D. Fla.)* ("Mukamal I"). On July 25, 2024, Movants timely filed their Answer[3].

After removal, Defendant, Robert Mendez, was served with process on August 9, 2024. (*See* ECF No. 4).

---

[1] The Cross Claim has counts numbered I, II, III, IV and VI but omits Count V.
[2] Defendant, Robert Mendez, did not object or otherwise file an opposition in the Bankruptcy Case or respond to the Complaint in this action or to the Movant's summary judgment motion.
[3] *See ECF No. 7 - Mukamal v. Ofer et al Case No. 24-cv-22803-BB, (S.D. Fla. August 23, 2024).*

On August 23, 2024, the Honorable Beth Bloom *sua sponte* remanded the matter to state court for determination [Mukamal I - ECF No. 11].  On August 26, 2027, Defendant, Raziel Ofer, moved for reconsideration before Judge Bloom and also sought an extension of time to file an answer in state court pending a determination of the motion for reconsideration.  Later in the day, Judge Bloom denied the motion for reconsideration[4].

The next day, on August 29, 2024, Defendant, Robert Mendez, filed a notice of removal [ECF No. 1] and opened the instant case.

On September 19, 2023, Defendant, Raziel Ofer, filed the Cross Claim. [ECF No. 6].

### Contextual Overview of the Cross Claim

The Cross Claim filed in this case is the salvo from Defendant, Raziel Ofer, in a long line of unsuccessful attempts to re-litigate matters, all of which have already concluded with adverse decisions against him.   Within the Cross Claim, Mr. Ofer references four (4) specific chains of interrelated litigation which collectively provide the basis of his claims in this case. A brief synopsis of these cases is necessary for this Court to understand the context from which the instant case emanates.

> **A. The "Opustone Case" -**  The Opustone Case was filed in Miami-Dade Circuit Court on March 27, 2019, under Case No. 2019-9489 CA 01, seeking damages against Mr. Ofer and several related entities, for conversion, civil theft and worthless checks. [See - Cross Claim ¶ 4].  On March 3, 2020, the Opustone Court entered a summary final judgment against Mr. Ofer and his related entities.  Mr. Ofer did not pay the judgment and the resulting collection efforts resulted in a sheriff's sale of his equity interest in several entities. [Cross Claim ¶¶ 5, 6, 7, 8, & 10].  One of those entities, MPM 17A,

---

[4] ECF No. 14

LLC, owned a 100% interest in 1560/1568 Drexel Avenue, LLC., which in turn owned two (2) buildings located on Miami Beach, Florida [Cross Claim ¶11, the real property is hereinafter referred to as the "Subject Property"]. Following the sheriff's sale, the Subject Property was transferred to Defendant, AJAR. [Cross Claim ¶ 11]. Mr. Ofer candidly concedes in paragraph 9 of the Cross Claim that rather than comply with the circuit court's orders, pay, or bond the judgment, he prepared and recorded a quit claim deed for the Subject Property owned by one his entities to another entity not subject to the judgment (DRO 15R). [Cross Claim, ¶ 9]. Mr. Ofer <u>unsuccessfully</u> challenged the judgment and the resulting sheriff's sale. [Cross Claim ¶ 14]. Frustrated with his inability to reverse his own actions, Mr. Ofer caused the filing of an action seeking to quiet title in favor of DRO 15R.

**B. The "Quiet Title Action"** - On June 23, 2021, DRO 15R and Mr. Ofer filed an action in Miami-Dade Circuit Court seeking to quiet title to the Subject Property [See *DRO 15R, LLC. et al v. AJAR Holdings, LLC, et al, Case No. 2021-14176 CA 01, (Miami-Dade Cir Ct., 2019)*, Cross Claim ¶ 14]. The Quiet Title Action was extensively litigated. In order to preserve the status quo, the presiding Judge, the Honorable Carlos Guzman, appointed a conservator to manage the Subject Property. [Cross Claim ¶¶ 35, 36]. True to form, Mr. Ofer refused to comply with Judge Guzman's orders and repeatedly interfered with the Conservator. On March 2, 2022, Judge Guzman conducted a hearing on the Conservator's emergency motion for criminal contempt. After hearing the evidence at the hearing, Judge Guzman orally indicated that he was holding Mr. Ofer in criminal contempt of court and directed the preparation of an order

to show cause for May 19, 2022.[5]  On March 3, 2023, Mr. Ofer caused DRO 15R to file for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code.

C. **The "DRO Bankruptcy"** - The issue concerning the title to the Subject Property was ultimately litigated in the DRO Bankruptcy. In a published opinion, the Honorable Laurel Isicoff determined that the Subject Property was owned by AJAR. *See In re: DRO 15R LLC 646 B.R. 216 (Bankr. S.D. Fla. September 30, 2020) appeal dismissed, DRO 15R, LLC v. Ajar Holdings, LLC et al., Case No. 22-civ-23964-DPG (S.D. Fla., March 30, 2023)*.[Cross Claim ¶¶ 17, 18].

D. **The "Drexel Foreclosure Case"** - Mr. Ofer alleges (ad nauseum) that the membership interest in MPM 17, and by extension the Subject Property, was purchased for the sum of $5.00. However, a complete review of the record of the various litigation surrounding the Subject Property provides a different reality. At the time that the Subject Property was conveyed to AJAR, it was subject to four (4) mortgages which had either: a) matured, or b) were in default.[6] Indeed, on February 23, 2022, the holder of the four (4) mortgages, Metropolitan Mortgage, commenced a foreclosure action against the Subject Properties in the Circuit Court in and for Miami-Dade County under Case No. 22-3487 CA 01. Drexel Financial Services, LLC was thereafter assigned the Metropolitan mortgages and related claims and substituted as a party Plaintiff. [Cross Claim ¶¶ 30, 33]. Relevant to the action *sub judice*, after notice and hearing, Drexel

---

[5] *See* Quiet Title Action D.E. Nos. 162, 168
[6] Additionally, it was discovered by the Conservator in the Quiet Title Action, that one of the buildings (1560 Drexel Avenue) did not have a certificate of occupancy since there was substantial construction that remained to be completed exacerbated by expired permits. The other building, (1568 Drexel) Avenue, was subject to multiple code enforcement violations and was subject to a demolition order as an unsafe structure.

obtained a summary final judgment against Mr. Ofer [Cross Claim ¶ 28], and thereafter obtained a charging order against Mr. Ofer's interest in 942 Penn. [Cross Claim ¶ 33].

E. **The "Judicial Attacks"** - The Opustone case was decided and remains pending before the Honorable Beatrice Butchko. Both the Drexel Foreclosure Action and the Quiet Title Action were decided by the Honorable Carlos Guzman. The two (2) relevant bankruptcies, DRO 15R and 942 Penn RR, were both adjudicated by the Honorable Laurel Isicoff. As each of the aforesaid cases resulted in decisions adverse to Mr. Ofer, a familiar pattern emerged. First, his various counsel were discharged, and then Mr. Ofer commenced an unhinged campaign impugning the integrity of the assigned trial judges and seeking disqualification with the stated goal of seeking a different result from a successor judge. In total, Mr. Ofer filed over fifteen (15) motions to disqualify Judges, Isiscoff, Guzman and Butchko. All of the motions were denied. Undaunted, Mr. Ofer began a pattern of lawfare against the judiciary in district court. Judge Isicoff was sued three (3) times, Judge Guzman once and Judge Butchko twice. Each of the three (3) cases against Judge Butchko have been dismissed. [*See Ofer v. Isicoff, Case No. 23-cv-21190-JEM (S.D. Fla. October 26, 2023); Ofer v. Isicoff, Case No. 23-cv-20849-RNS (S.D. Fla. March 21, 2023); Ofer v. Isicoff, Case No. 23-cv-24738-wfjg (S.D. Fla., April 30, 2024)*]. Likewise, the case against Judge Guzman was dismissed. See [*Ofer v. Guzman, Case No. 22-cv-20180-JLK, (S.D. Fla., April 4, 2022)*]. The first case against Judge Butchko, *Ofer v. Butchko, Case No. 24-cv-22683-CMA (S.D. Fla., August 19, 2024)* was dismissed by Judge Altonaga with prejudice. Ofer did not appeal, but rather on August 30, 2024, he refiled the same complaint as a new matter. *Ofer v. Butchko, 24-23380-BB (S.D. Fla.)*.

F. **Ofer's Fugitive Status –** To further complicate matters, Mr. Ofer is currently a wanted fugitive having fled the United States to avoid arrest on a warrant issued in Miami-Dade County, after he was found guilty of perpetrating an organized scheme to defraud, grand theft in the first degree and issuing worthless checks. See *State v. Ofer, Case No. 2019-CF08963 (Miami-Dade Cir Ct., November 17, 2022)*.

Against this very colorful backdrop, Mr. Ofer has filed the Cross Claim in the instant case seeking to re-litigate or overturn the final judgments in the Opustone Case, the Quiet Title Action, the DRO Bankruptcy and the Drexel Foreclosure Case. Alternatively, he seeks damages which he attributes to losses he alleges to have sustained as a result the final judgments.

## Argument

### Standard for Motion to Dismiss

The standard for evaluation of a motion to dismiss was clearly enunciated by this Court in in *Jasmin v. Florida 2024 WL 665678 (S.D. Fla. January 29, 2024),* wherein your Honor held:

> When reviewing a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *Hunt v. Aimco Props., L.P., 814 F.3d 1213, 1221 (11th Cir. 2016)*. A court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. See *Brooks v. Blue Cross & Blue Shield of Fla. Inc., 116 F.3d 1364, 1369 (11th Cir. 1997)*. However, a court need not accept a plaintiff's legal conclusions as true. *Sinaltrainal v. Coca–Cola Co., 578 F.3d 1252, 1261 (11th Cir.*

*2009)*; see also *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)*. Therefore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Applying this standard to the Cross Claim filed by Mr. Ofer, it is facially clear that it should be dismissed.

### 1. The Cross Claim Constitutes an Impermissible Shotgun Pleading

The Cross Claim is a classic shotgun pleading comprised of five (5) counts, each of which incorporate by reference the allegations, conspiracy theories and conclusions of law contained within paragraphs numbered 1 through 41. Mr. Ofer mixes these allegations in a legally indiscernible frappe, which allege that all defendants are accused of the same conduct under a multitude of theories.  He impermissibly incorporates each of the forty-one (41) allegations into the five misnumbered counts of the Cross Complaint.  The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and any allegations that are material to the cause of action are buried beneath innumerable layers of rambling irrelevancies. This type of pleading completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts.  *Magluta v. Samples 256 F. 3d 1282 (11th Cir. 2001)*. "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015)*. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims

against them , and the grounds upon which each claim rests. *Id.* Such a shotgun pleading makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). Therefore, "shotgun pleadings are routinely condemned by the Eleventh Circuit." *Real Est. Mortg. Network, Inc. v. Cadrecha*, No. 8:11-CV-474-T-30AEP, 2011 WL 2881928, at *2 (M.D. Fla. July 19, 2011) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991)).

Here, the mélange of claims is so dense that it is impossible to discern exactly what is being alleged against whom in each of the counts. While the counts are given titles, they each contain multiple theories and do not properly segregate the causes of action or the defendants. By way of a non-exclusive example, Count I alleges disparate claims of fraud based upon alleged misrepresentations made by different defendants in different cases which lead to the entry of different judgments. Indeed, not all of the cross defendants are parties to each of the judgments, yet in the *ad damnum* clause, Mr. Ofer seeks an unspecified judgment against all cross defendants. At the end of the inquiry, it is impossible to discern who did what, where and when.

Count II then alleges that each of the defendants aided and abetted each other in a series of alleged frauds the result of which were the entry of several judgments in different cases against Mr. Ofer. The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a 'shotgun pleading.' " *Beckwith v. BellSouth Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) (per curiam) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1029–30 (11th Cir. 2001)). "Shotgun pleadings wreak havoc on the judicial system" and "divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006); *Magluta supra.* Unsurprisingly, under similar circumstances, with some of the defendants to this

action, Mr. Ofer has suffered dismissal for exactly the same objectionable pleading deficiencies found in this case. *See Ofer v. Rodriguez et al.*, Case No. 21-cv-24125 (S.D. Fla., August 1, 2022); *Order granting motion to dismiss [ECF No. 33]*.

**2. The Claims are barred by Litigation Privilege**

All of the claims asserted by Mr. Ofer are predicated upon his displeasure with rulings in a series of separate, but interrelated cases, which he describes in varying degrees of detail in paragraphs 1 through 41 of the Cross Claim. Germaine to the instant motion is the undisputed fact that each and every one of the factual allegations contained in Summary History and Allegations of the Cross Claim, which are specifically incorporated into each of its five (5) counts, occurred during the course of litigation. Particularly fatal to Mr. Ofer's various claims are allegations contained in the following paragraphs:

> 14. In the Opustone Action, Ofer unsuccessfully: (1) moved to set aside the execution sale of the membership interests on August 9, 2021; (2) moved for "equitable relief" from the transfer of the Property to AJAR on August 9, 2021, and (3) filed a renewed motion to set aside the execution sale on October 1, 2021. On June 23, 2021, DRO, RO15, and Ofer filed a complaint against AJAR in Miami-Dade Circuit Court to quiet title to the Property, claiming that its interest under the DRO Deed was superior to AJAR'S interest under the AJAR Deed (the "DRO Quiet Title Action"), *Dro 15R, LLC et al, vs. Ajar Holdings, LLC.*, et al (Case No. 2021-14716 CA 01) pending before the Eleventh Circuit for Miami Dade County, Florida.
>
> 16. The DRO Quiet Title Action was removed to the United States Bankruptcy Court for the Southern District of Florida where DRO had filed for reorganization.
>
> 17. After extensive litigation on the matter, the bankruptcy court incorrectly opined that the Property was not real property belonging to DRO and denied DRO's motion for summary judgment ….
>
> 18. The bankruptcy court entered the order granting Ajar's Cross Motion for Summary Judgment on September 30, 2022 where the **Court exceeded its jurisdiction in declaring the property as**

> **owned by and belong to Ajar once it made the determination that the Property was not property of the estate.**
>
> 20. The Drexel Financial judgment underlining that defendant's claim that was ... obtained against Ofer is based on a convoluted claim and void final judgement
>
> 34. There is a unique interplay of closely held companies in this matter which must also be explored in **context to the final judgments and charging orders** {emphasis added}
>
> 41. All of the acts committed by the Defendants were deceptive and unfair and done **in an effort to falsely obtain judgments** against Ofer to extract his wealth unjustly and unfairly. {emphasis added}

Turning to the specific counts of the Cross Claim, it is clear from the allegations that each alleged predicate act constituting the alleged causes of action are rooted in the litigation described in ¶¶ 1 -41. Count I seeks damages for fraud, predicated upon acts that occurred during litigation [See Cross Claim ¶¶ 43 – 49]. Count II seeks damages based upon aiding and abetting the alleged fraud which occurred in the cases described in ¶¶ 1 -41 [See Cross Claim ¶¶ 53 -59]. Count III – portends to be an action based upon a conspiracy to commit fraud, once again all predicated upon acts which occurred during the course of litigation. [See Cross Claim, ¶¶ 63, 64].

Count IV is for Abuse of Process. The 11th Circuit recently ruled on this issue in *Maraist v. Coates*, 2023 WL 8643681 (11th Cir. December 14, 2023) and held, "Because the conduct that forms the basis of the abuse of process claim occurred in the state court action, we conclude that these defendants enjoyed the litigation privilege and the district court properly dismissed Count Three." See also *LatAm Investments, LLC v. Holland & Knight, LLP, 88 So. 3d 240, 245 (Fla. 3d DCA 2011)* (affirming trial court dismissal of abuse of process with prejudice after finding that defendant's conduct was protected by the litigation privilege); *In re Fundamental Long Term Care, Inc., 512 B.R. 690, 702 (Bankr. M.D. Fla. 2014),* aff'd sub nom. *Est. of Jackson v. Schron, 8:16-CV-22-T-17, 2016 WL 4718145 (M.D. Fla. Sept. 8, 2016)*, aff'd sub nom. *In re Fundamental Long*

*Term Care, Inc.*, 873 F.3d 1325 (11th Cir. 2017) (dismissing abuse of process claim based on litigation privilege); *Duncanson v. SJ Wathen Bloomington LLC, 614CV704ORL40KRS, 2016 WL 7228743, at *2 (M.D. Fla. June 24, 2016)* ("Here, all of the allegations in the abuse of process claim demonstrate that any allegedly wrongful actions were taken in the course of and related to this litigation and were thus absolutely privileged under Florida law.").

Count VI (actually Count V) portends to claim damages under the Florida Unfair and Deceptive Trade Practices Act. Once again, all of the allegations contained in ¶78 and 79 of this count are grounded in the unfavorable results Mr. Ofer obtained during the course of litigation and/or collection of judgments obtained in the course of litigation in the various cases, and are likewise barred by the litigation privilege.

Highly instructive in this case is this Court's Report and Recommendations in the matter of *Jasmin v. Florida, 2024 WL 665678 (S.D. Fla. January 29, 2024)*[7], wherein your Honor explained the applicational bar of litigation privilege under similar facts and held:

> Under Florida law, a litigation privilege exists which requires that "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding ... so long as the act has some relation to the proceeding." Levin, Middlebrooks, Mabie, Thomas Mayes & Mitchell, P.A. v. United States Fire Ins. Co., 639 So. 2d 606, 608 (Fla. 1994); see also, Ross v. Blank, 958 So. 2d 437, 441 (Fla. 4th DCA 2007) ("Statements made 'in connection with' or 'in the course of' an existing judicial proceeding are protected by absolute immunity, even if they are not necessarily made in court or under

---

[7] *Approved - Jasmin v. Florida 2024 WL 664542 (S.D. Fla., February 16, 2024)*

oath.") (citation omitted); Jackson v. BellSouth Telecommunications, 372 F.3d 1250, 1277 (11th Cir. 2004) ("Where ... the conduct in question is inherently related to, and occurs during an ongoing judicial proceeding, under Florida law, that conduct must be protected so that participants in a lawsuit are unhindered in exercising their judgment as to the best way to prosecute or defend the lawsuit."). The litigation privilege "extends not only to the parties in a proceeding but to judges, witnesses, and counsel as well." Id. at 608. It "applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin." Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So. 2d 380, 384 (Fla. 2007).

In this case, each of the five (5) alleged causes of action arise under state law and during or incident to litigation therefore warranting dismissal with prejudice. *Peterson v. JP Morgan Chase Bank, N.A., 219 F. Supp. 3d 1195, 1197 (S.D. Fla. 2016)* (dismissing claims with prejudice based upon Florida's litigation privilege because "[h]ere, the activities about which Plaintiffs complain—the foreclosure and the filing of proof in a bankruptcy action—are inherently part of a judicial proceeding. Accordingly, the litigation privilege precludes Plaintiff from asserting any claim arising out of Defendants' acts taken in connection with the foreclosure action or the related bankruptcy case."); *El Hassan v. Liberty Home Equity Solutions, Inc.*, No. 17-cv-22435, 2018 WL 11346834, at *3 (dismissing claims with prejudice based upon litigation privilege); *Jackson*, 372 F.3d at 1277 ("Florida courts have also made it abundantly clear that any affirmative defense, including the litigation privilege, may be considered in resolving a motion to dismiss when the

Case 1:24-cv-23332-JB   Document 8   Entered on FLSD Docket 10/02/2024   Page 14 of 20

CASE NO.: 24-CV-23332-JB

complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action."); *Madura v. Bank of America, N.A.*, 767 F. App'x 868, 872-73 (11th Cir. 2019) (affirming dismissal with prejudice of fraud claim barred by litigation privilege because amendment would be futile).

3. **The Cross Claim fails to state claims upon which relief may be granted.**

A. **Count I – Fraud**

Count I of the Cross Claim seeks damages for fraud. Paragraph 44 of said Count alleges, "The Defendants have made material misrepresentations of fact concerning their conduct in obtaining the various judgments against Ofer and Mendez resulting in an immanent [sic] and irreparable harm to them [sic],especially Ofer, to wit, presenting claims which are ambiguous and conflicting on their face or plagued with fraudulent conduct." To prevail on a claim of fraud, the plaintiff must establish the following elements: (1) a misrepresentation of a material fact; (2) the representer of the misrepresentation, knew or should have known of the statement's falsity; (3) intent by the representation that the representation will induce another to rely and act on it; and (4) resulting injury to the party acting in justifiable reliance on the representation. *Pulte Home Corp. v. Osmose Wood Preserving, Inc., 60 F.3d 734, 742 (11th Cir. 1995)*. In summary Mr. Ofer alleges that the Defendants made misrepresentations of fact in order to obtain judgments against him. Conspicuously absent from the allegations is the necessary to whom, when and where all of which are required under the heightened pleading standards of Rule 9(b). Under Rule 9(b), a fraud claim requires the plaintiff to allege: (a) the precise statements, documents, or misrepresentations made; (b) the time, place, and person responsible for the statement; (c) the content and manner in which these statements misled the plaintiff; and (d) what the defendants gained by the alleged fraud. *Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380–81 (11th Cir. 1997)*. Under

Rule 9(b)—a pleader must do more than simply lump together defendants into non-particularized and all-encompassing fraud allegations. See *Burgess v. Religious Tech. Ctr., Inc., 600 F. App'x 657, 663 (11th Cir. 2015)* ("the plaintiffs lump all the defendants together as the sources of the misrepresentations, and they pleaded the who, what, and when elements of their fraud in the alternative.... [L]umping multiple defendants together in such generalities is insufficient under Rule 9(b)"); *Honig v. Kornfeld, 339 F. Supp. 3d 1323, 1343 (S.D. Fla. 2018)* (dismissing claims because "it is apparent that Plaintiffs have simply lumped together all of the Defendants in their allegations of fraud.") (quotes and citation omitted); see also *Jepson, Inc. v. Makita Corp., 34 F.3d 1321, 1328 (7th Cir. 1994)*.

More importantly, Mr. Ofer alleges that the misrepresentations were used to obtain judgments against him. It is therefore axiomatic that the representations were made to a court and not him individually. Putting aside the obvious issues of issue preclusions, claim preclusion, collateral estoppel, res judicata and the application of the *Rooker Feldman* doctrine, based upon this alleged conduct, Mr. Ofer does not, and cannot, allege that **he relied** on the statements when the judgments were entered by various courts. In other words, based upon the facts asserted, Mr. Ofer cannot plead a factual predicate for the essential element of detrimental reliance and therefore the count must be dismissed.

**Count II – Aiding and Abetting Fraud**

Florida Law generally requires a plaintiff to prove the following elements in a claim for aiding and abetting fraud: (1) the existence of the underlying fraud, (2) the defendant's knowledge of the fraud, and (3) the defendant provided substantial assistance to the commission of the fraud. *Logan v. Morgan Lewis & Bockius, 350 So. 3d 404, 410 (Fla. 2d DCA 2022); Gilison v. Flagler Bank, 303 So. 3d 999, 1002 (Fla. 4th DCA 2020)* (citing *ZP No. 54 Ltd. P'ship v. Fid. & Deposit*

*Co. of Md., 917 So. 2d 368, 372 (Fla. 5th DCA 2005))*. Federal Rule of Civil Procedure 9(b) requires a heightened pleading standard for fraud claims: a party alleging fraud "must state with particularity the circumstances constituting fraud." A plaintiff alleging fraud must plead the "who, what, when, and where [of the fraud]." *Infante v. Bank of Am. Corp., 680 F. Supp. 2d 1298, 1303 (S.D. Fla. 2009)*. Count II, once again, recounts that the alleged underlying fraud is predicated upon the entry of various judgments against Mr. Ofer. For the same reasons set forth as to Count I, Count II should be dismissed because Mr. Ofer has not alleged the required nexus between any statements made to him and the entry of the judgments, which he alleges constitute the basis for the alleged fraud. [See Cross Claim ¶¶ 53, 54 & 55].

### B. Count III - Conspiracy to Commit Fraud

To state a claim for conspiracy to commit fraud under Florida law, Plaintiffs must establish: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff[s] as a result of the acts done under the conspiracy." *Cordell Consultant, Inc. Money Purchase Plan and Trust v. Abbott, 561 F. App'x 882, 886 (11th Cir. 2014) (citing Raimi v. Furlong, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997))*. Despite arising under Florida law, a civil conspiracy claim is subject to Rule 9(b)'s heightened pleading standard. See *Meridian Tr. Co. v. Batista, No. 17-23051, 2018 WL 4693533, at \*6 (S.D. Fla. Sep. 26, 2018)* ("Conspiracy claims sounding in fraud must also meet Rule 9(b)'s heightened particularity requirements.") (citation and brackets omitted). Furthermore, "[g]eneral allegations of conspiracy are inadequate. A complaint must set forth clear, positive, and specific allegations of civil conspiracy." Id. (citing *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc., 79 So. 3d 855, 863 (Fla. 4th DCA 2012))* (quotations omitted). Turning to the allegations of the Cross Claim, Mr. Ofer, fails to properly detail the

specific misrepresentations allegedly made, when they were made, or to whom they were made. Additionally, while he generally pleads that as a result of various unidentified judgments he has lost tens of millions of dollars of real estate [Cross Claim, ¶ 65], he has failed to properly plead how these unspecified judgments, presumably but not identifiably, held by the defendants, resulted in his loss of real estate. Hence, aside from the lack of specificity, Count III fails since there is no allegation which would tie the judgment(s) to the alleged loss and satisfy the fourth element necessary to state a cause of action for conspiracy to commit fraud.

### C. Count IV – Abuse of Process

To state a claim for abuse of process, a plaintiff must allege three elements: "(1) that the defendant made an illegal, improper, or perverted use of process; (2) that the defendant had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process; and (3) that, as a result of such action on the part of the defendant, the plaintiff suffered damage." *S & I Invests. v. Payless Flea Market, Inc., 36 So. 3d 909, 917 (Fla. 4th DCA 2010)*. "Abuse of process involves the use of criminal or civil legal process against another primarily to accomplish a purpose for which it was not designed." *Bothmann v. Harrington, 458 So. 2d 1163, 1169 (Fla. 3d DCA 1984)*. "For the cause of action to exist, there must be a use of the process for an immediate purpose other than that for which it was designed." *Scozari v. Barone, 546 So. 2d 750, 751 (Fla. 3d DCA 1989)*. On the other hand, "[t]here is no abuse of process ... when the process is used to accomplish the result for which it was created, regardless of an incidental or concurrent motive of spite or ulterior purpose." Id. Fatal to Count VI is paragraph 74 of the Cross Claim wherein Mr. Ofer alleges that the "Defendants had the ulterior motive to drain the wealth of Ofer by abusing the judicial system." The Cross Claim facially demonstrates that the judicial process was utilized to obtain judgments against Mr. Ofer in various cases which is exactly the intended purpose of collection litigation.

The defendants' motives are legally irrelevant where, as here, the judicial process was utilized for its intended purpose to resolve disputes and culminated in the entry of judgments against Mr. Ofer. Therefore, Count IV should be dismissed for failure to state a claim upon which relief may be granted.

### D. Count VI- FDUPTA

To state a claim under FDUTPA, a plaintiff must allege that a deceptive or unfair practice occurred in the course of trade or commerce. *Benjamin v. CitiMortgage, Inc., No. 12-62291-CIV, 2013 WL 1891284, at \*4 (S.D. Fla. May 6, 2013) (citing Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006))*. FDUPTA defines trade or commerce as "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. Ann. § 501.203(8) (2016). A claim under FDUPTA cannot be asserted against a defendant who is simply collecting a debt. *Williams v. Nationwide Credit, Inc., 890 F. Supp. 2d 1319, 1321 (S.D. Fla. 2012)* ("Several courts have held that debt collection activities are not "trade or commerce" for FDUTPA purposes.") (citing *State v. Shapiro & Fishman, LLP*, 59 So.3d 353, 355-57 (Fla. 4th DCA 2011); *Law Office of David J. Stern, P.A. v. State*, 83 So.3d 847, 849-50 (Fla. 4th DCA 2011); *Kelly v. Palmer, Reifler & Assocs., P.A.*, 681 F.Supp.2d 1356, 1371—77 (S.D. Fla. 2010); *Trent v. Mortgage Electronic Registration Sys., Inc.*, 618 F.Supp.2d 1356, 1365 n. 12 (M.D. Fla. 2007)).

In paragraph 78 of the Cross Claim, Mr. Ofer alleges that, "The Defendants have engaged in deception and unfair practices by obtaining the various judgments against Ofer resulting in an immanent [sic] and irreparable harm to them [sic], especially Ofer, to wit, judgments which are gained by fraud and other scrupulous [sic] conduct." Putting aside the grammatical morass of the

foregoing statement, there is absolutely no allegation that the defendants' actions occurred in trade or commerce. Additionally, in reviewing all of the incorporated allegations (¶¶ 1 – 41), one thing is clear, distilled to their essence, all of the activities complained of by Mr. Ofer were in furtherance of collection of judgments. Under the above-stated decisional authority, debt collection does not give rise to a cause of action under FDUPTA, and hence count VI fails to state a claim for which relief may be granted.

### 4. The Cross Claim is Untimely

In actions removed to district court, Rule 81, Fed R. Civ. P., controls the time period required for the parties to file their answer. Specifically, Rule 81(c)(2) requires the defendants to file their answers on the later of:

(A) 21 days after receiving—through service or otherwise—a copy of the initial pleading stating the claim for relief;

(B) 21 days after being served with the summons for an initial pleading on file at the time of service; or

(C) 7 days after the notice of removal is filed.

In this case, the latest notice of removal was filed more than 21 days after service on Defendants, hence, pursuant to Rule 81 (c)(1)(2), and Rule 12(a)(1)(B)[8] the last day to file the Cross Claim was September 6, 2024. Under any standard, the Cross Claim is untimely and should be dismissed.

*Conclusion*

Based upon the foregoing authorities, it is respectfully requested that this Honorable Court dismiss the Cross Claim with prejudice.

---

[8] (B) A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.

CASE NO.: 24-CV-23332-JB

Respectfully submitted,

**RONIEL RODRIGUEZ IV, P.A.**

*Counsel for Movants*

1600 Museum Tower
150 West Flagler Street
Miami, Florida 33130
305-773-4875 Dade/Direct
954-769-0919 Broward
305-600-1254 Monroe

By:___/s/Roniel Rodriguez IV___
Roniel Rodriguez IV
Florida Bar No.: 544787
E-mail:     Ron@RJRfirm.com
Primary:   Service@RJRfirm.com

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1(a)(3)

The undersigned hereby certifies that he has not conferred with the Cross-Plaintiff, Mr. Raziel Ofer, since this Motion seeks dismissal and is exempted pursuant from the conferral requirements of Rule 7.1 (a)(3).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 2, 2024, I electronically filed the foregoing documents with the Clerk of Court, by using the CM/ECF system which will send a notice of electronic filing to those parties' registered counsel to receive Notices of Electronic Filing ("NEF") in this Case and by First Class Mail to those parties who are not registered to receive CM/ECF:

Raziel Ofer
3701 Degarmo Lane
Coconut Grove, Florida 33133

Robert Mendez
3701 Degarmo Lane
Coconut Grove, Florida 33133

By:___/s/Roniel Rodriguez IV___
Roniel Rodriguez IV